**NOT FOR PUBLICATION**                                        **CLOSED**


## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY


|  |  |  |
|---|---|---|
| JOSE R. VAZQUEZ, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 04-2965 (JAP) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| Defendant, | : | |
| | : | |

Appearances:

STEVEN GAECHTER, ESQ.
58 Main Street
Hackensack, NJ 07601
        Attorney for Plaintiff

CHRISTOPHER J. CHRISTIE
United States Attorney
MARGARET A. DONAGHY
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004
        Attorney for Defendant

PISANO, District Judge:

Before the Court is Jose R. Vazquez's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying his request for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and renders its decision without oral argument. *See* Fed. R. Civ. P. 78. For the reasons expressed below, the record provides substantial evidence supporting the Commissioner's decision that Plaintiff was not disabled. Accordingly, the Court affirms.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed applications for DIB and SSI on February 2, 2001, alleging a severe and disabling back condition. His claims were denied initially on April 26, 2001, and again on reconsideration on April 9, 2002. Plaintiff timely filed for a hearing before an administrative law judge on May 2, 2002. A hearing was held on January 28, 2003 before Administrative Law Judge Ralph Muehlig ("ALJ"). The ALJ issued a decision February 26, 2003, denying Plaintiff's application. Plaintiff timely filed a request for review with the Social Security Appeals Council on April 14, 2003. Thereafter, the Appeals Council reversed the ALJ's decision of February 26, 2003 and remanded the case for a new hearing. The Appeal Council, *inter alia*, instructed the ALJ to (1) update the evidence concerning the claimant's physical impairments; (2) obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments; (3) give further consideration to the claimant's maximal residual functional capacity during the

entire period at issue and provide rationale with specific references to evidence of record in support of the assessed limitations; (4) obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's ability to perform his past relevant work or on his occupational base.

The second hearing was held on September 8, 2003 before the same ALJ.  The ALJ issued a decision on September 26, 2003, again denying Plaintiff's application.  Plaintiff timely filed a request for review with the Appeals Council on March 19, 2004.  The Appeals Council affirmed the decision of the ALJ in a written decision dated May 7, 2004, which constitutes a final decision of the Commissioner.  On June 28, 2004, Plaintiff filed this action challenging the final decision.

### B. Factual History

Plaintiff was born on January 6, 1966.  He was educated in Puerto Rico and did not fully complete the eleventh grade.  He possesses no vocational training nor does he have any vocationally significant skills.  His native language is Spanish and his ability to understand and speak English is limited.  He worked between 1988 and 2000 for various companies as a packer, construction worker, and maintenance worker.  Plaintiff asserts that he has been disabled since April 1, 1999 due to back pain.

#### 1. Plaintiff's Employment History

Plaintiff most recently worked as a maintenance worker in a town-house complex between 1999 and 2000.  He worked five days a week for eight hours a day.  In his work history report, Plaintiff stated that the job involved maintenance of the apartment's plumbing, and carpentry, painting, garbage removal, and lifting panels of sheet rock weighing in excess of fifty

pounds or more.

In his testimony, Plaintiff claimed that he was fired from this job because his disability rendered him unable to lift items or carry out his duties.  Plaintiff alleges that has not been able to do any work since his last maintenance job because he alleges that the pain he experiences is worsening and he can not sit or stand for long periods of time.

Prior to that job, Plaintiff had worked in construction from 1994 to 1997, which required lifting and carrying 300-pound panels a distance of fifteen feet.  According to Plaintiff's work history report, he worked five days a week for eight hours a day in construction.

### 2. Medical Evidence Prior to April 1, 1999

The record indicates that Plaintiff has a history of treatment for various ailments prior to his alleged disability onset date of April 1, 1999.

Plaintiff was in a motor vehicle accident in June 1993.  Thereafter, Plaintiff presented to an emergency room complaining of neck and low back pain.  An x-ray showed straightening of the normal lordotic curve, which was consistent with muscle spasm.

Plaintiff sought treatment from Dr. Howard Bialsky and Dr. Steven Lomazow, a neurologist.  Both doctors indicated that Plaintiff suffered continuing pain as a result of the 1993 accident.  He was treated with a course of physical therapy, non-steroidal anti-inflammatory medications, lumbar epidural steroid blocks, and a TENS unit (a small medical device that electrically stimulates nerve endings to help alleviate pain).

Dr. Lomazow noted bilateral cervical (neck/upper back) spasm and tenderness; limited ranges of motion in the neck; upper trapezius spasm, which was greater on the right; and bilateral paraspinal spasm and 25% limitation in range motion.  Dr. Lomazow conducted an MRI of the

4

lumbar (lower back) spine in October 1993, which demonstrated a bulging disc at 2-3 and 4-5 and a posterior central herniation at 5-1.  Dr. Bialsky observed that Plaintiff's neck muscles and trapezius muscles were contracted, swollen, and diffusely tender; cervical range of motion was painful at the extremes of all arcs; Plaintiff tested positive for pain in the neck and trapezius regions; and the entire thoracic spine (middle back) paravertebral musculature was contracted, swollen, and point tender.  However, Plaintiff's deep tendon reflexes were equal and active; peripheral sensitivity revealed sensation to be equal and intact for upper extremities, and manual muscle testing of upper extremities was without weakness.  Dr. Bialsky gave Plaintiff Ibuprofen 800 mg twice per day and Fioricet for pain.  A report addressed to Dr. Bialsky indicates that Plaintiff's right knee had no evidence of fracture, dislocation, or any other bony or joint abnormality, and that the overlying soft tissues were unremarkable.

In May 1995, Dr. Bialsky submitted a letter stating that Plaintiff had sustained an injury permanent in nature that would permanently reduce the functional capabilities of his lumbar spine.

In November 1995, Dr. Lomazow conducted a follow-up examination.  Plaintiff reported continued pain in his low back.  Dr. Lomazow noted significant bilateral paraspinal lumbar spasm with 15-20% limitation of motion in all directions.

Also in November 1995, Plaintiff received an epidural steroid block to treat his low back pain.

### 3.  Medical Evidence After April 1, 1999

The record does not contain medical evidence for the period between November 1995 and March 2001.  However, Plaintiff visited several physicians during the process of applying for

5

DIB and SSI.[1]

On March 21, 2001, Plaintiff was examined by Dr. Luis Vassallo.  Dr. Vassallo noted

that, at five feet, eleven inches tall and 290 pounds, Plaintiff was obese.  Dr. Vassallo chronicled

Plaintiff's mobility, including that Plaintiff walked with a limp favoring his right lower

extremity; sat uncomfortably; was able to remove his shoes while carefully bending his back;

was able to squat and walk on his heels and tip-toes; could climb upon the examining table; was

able to bring both legs parallel to the floor while sitting without any back pain; could use both

hands for fine and gross manipulation; had a decreased range of motion in the upper and lower

extremities with no sensory deficits; and had grip strength of 5 out of 5.  X-rays revealed that

there was no evidence of fracture, dislocation, or subluxation (vertebral misalignment irritating

spinal nerves) of the cervical spine; a normal right knee; and an essentially normal lumbosacral

spine.  Dr. Vassallo concluded that Plaintiff had chronic back pain and diminished motion of the

lumbar spine with clinical evidence of right sciatic syndrome.  His findings indicate that Plaintiff

does not need any hand-held assistive devices for walking and could use both hands for fine and

gross manipulation.  However, Dr. Vassallo determined that Plaintiff cannot get involved in

repetitive bending or lifting.

On April 5, 2001, Dr. Joseph Udomsaph, a non-examining consultative physician

employed by the State Disability Determination Service, completed a functional capacity

assessment.  Dr. Udomsaph concluded that the Plaintiff could occasionally lift up to 20 pounds,

frequently lift up to 10 pounds, stand or walk about six hours in an eight-hour work day, sit about

---

[1] In 2002, in addition to pain, high blood pressure, and arthritis, Plaintiff was diagnosed
with diabetes and began to take insulin twice a day.  Plaintiff does not claim diabetes as a basis
for a disability determination.

6

six hours in an eight-hour work day, and push or pull without limitation.  Dr. Udomsaph advised as postural limitations that Plaintiff could occasionally climb, stoop, kneel, crouch, and crawl, and frequently balance.  Finally, Dr. Udomsaph advised no manipulative, visual, communicative, or environmental limitations.

Dr. Jean Darbouze treated Plaintiff beginning in October 2001.  On August 28, 2001, Plaintiff had a MRI of the lumbar spine that showed desiccation of almost all of the lumbar discs, but most prominently the L5-S1 disc.  Further, L5-S1 manifested a broad based central herniation and a compromised bilateral neural foramina (openings between vertebrae through which nerves leave the spine and extend to other parts of the body).  Nevertheless, the MRI revealed that the remainder of the lumbar discs did not show any evidence of herniation.  Additionally, the MRI report found that the cauda equine (collection of nerve roots at the lumbar end of the spinal cord) and the conus medullaris (most distal bulbous part of the spinal cord ) were unremarkable.

In November 2001, Dr. Darbouze completed a reports for agencies of the State of New Jersey.  In one report, Dr. Darbouze stated that Plaintiff s had a herniated disc and severe muscle spasms in his lumbar spine.  He suggested that Plaintiff's condition might improve slightly with physical therapy.  Further, he recommended limitations on walking, standing, climbing, stooping, bending, and lifting.  Dr. Darbouze opined that he believed that, at that time, Plaintiff could not work full- or part-time, and that the duration of his incapacity would be more than twelve months.  The report also notes elevated blood pressure.  In a second report, Dr. Darbouze also opined that Plaintiff could not engage in any work.  Further, Dr. Darbouze reported that Plaintiff had physical limitations on standing, walking, climbing, stooping, bending, lifting, as well as limitation of flexion and extension of lower back.  However, he indicated that Plaintiff retained

the functional capacity to conduct normal activities despite his condition.

In January 2003, Dr. Darbouze indicated that Plaintiff's diagnosis was bulging of lumbar discs and herniated disc of lumbar spine.  Dr. Darbouze stated that Plaintiff had pain to the lower back with radiation to the lower extremities, which was relieved by analgesics.  Additionally, he found a reduced range of motion, muscle spasm, and weight change.  He noted that Plaintiff's pain and other symptoms were severe enough to constantly interfere with attention and concentration needed to perform even simple work tasks.  Dr. Darbouze opined that Plaintiff could walk only one block without rest or severe pain, sit for fifteen minutes at a time, and stand twenty minutes at a time.  He concluded that in an eight-hour work day, Plaintiff could sit, stand, or walk for less than two hours.  Dr. Darbouze stated that Plaintiff could only occasionally lift weights weighing less than ten pounds, could only rarely stoop, crouch, or climb stairs, could not twist or climb ladders, and had significant limitations on reaching, handling, or fingering.  Dr. Darbouze noted that cold would seriously worsen Plaintiff's pain.

Dr. Amir Hanna, a neurologist, treated Plaintiff from May 2002 to July 2002.  Dr. Hanna conducted a EMG/nerve conduction test, which revealed electrical instability as well as evidence of right L5-S1 radiculopathy (disease of the spinal nerve roots).  Dr. Hanna recommended physical therapy and, if such therapy proved to be ineffective, possibly a pain management program.  In another report, Dr. Hanna noted that a physical examination of Plaintiff was unremarkable.  However, a neurological examination showed Plaintiff's deep tendon reflexes were 1-2 out of 4 in the upper extremities, and 1 out of 4 in the knees.  Further, Plaintiff had weakness of the right knee in flexion at 3-4 out of 5.  Finally, Dr. Hanna observed a right antalgic gait (limp where a user favors a motion to avoid pain).

8

Plaintiff was examined by Dr. Champa Bid on March 15, 2002.  This examination revealed a loss of weight by the Plaintiff to 272 pounds.  Dr. Bid noted that Plaintiff used a cane in his right hand for ambulation, and indicated that the cane was needed all the time and that he could walk only a few steps without the cane.  However, Dr. Bid noted that Plaintiff used the cane improperly.  Dr. Bid concluded that Plaintiff could sit in a chair for a few minutes, get out of the chair independently, climb the examining table independently, and lie in a supine position.  Although Plaintiff refused to heel/toe walk, he was able to squat.  Dr. Bid observed that flexibility in the cervical spine was normal, and flexibility in the lumbrosacral spine was limited to eighty degrees of forward flexion.  Plaintiff was diagnosed with low back pain, hypertension, and arthritis, with a prognosis of fair.  Dr. Bid opined that Plaintiff would benefit from a pain management program and a work conditioning program so that his ability to perform work could be established.

On April 4, 2002, Dr. Stuart From, a non-examining consultative physician employed by the State Disability Determination Service, noted that Plaintiff had symptoms of continuous low back pain with radiation that was relieved by anti-inflammatory and analgesic medication.  He opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for at least two hours in an eight hour workday, sit about six hours in an eight hour workday, and had no limitations on pushing or pulling.  He concluded that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but could never use ladders, ropes, or scaffolds.  Further, he concluded that Plaintiff had no manipulative, visual, or communicative limitations, and that his only environmental limitation was to avoid concentrated exposure to hazards.  Dr. From commented that the Plaintiff improperly used a cane in the wrong hand and

9

believed that the medical evidence did not justify Plaintiff's use of the cane.  Further, Dr. From

stated that Plaintiff had minimal positive findings on exam.  Dr. From concluded that there was no

contraindication to the performance of light duty with limited standing and walking.

During the hearing on September 8, 2003, a testifying medical expert, Dr. Marvin Chirls,

stated that there was no evidence for dermatone (area of skin innervated by sensory fibers from a

single spinal nerve) deficiency in the neurological examination.  He stated that EMG results from

Dr. Hanna showed only positive paraspinals, which occurs in fifteen percent of the asymptomatic

population.  Dr. Chirls opined that Plaintiff's impairment did not meet a Listed Impairment.[2]  Dr.

Chirls noted that although Plaintiff's MRI showed herniated discs at L5/S1, there was no clinical

correlation of objective findings.  He further expounded that over thirty percent of patients who

had a MRI showing herniated discs are asymptomatic.  He opined that Plaintiff did not meet 1.04

of the Listed Impairments because he does not have the appropriate distribution sensory loss.  Dr.

Chirls opined that Plaintiff could do medium work.

            **4. Plaintiff's Daily Activities**

Plaintiff currently lives with his two children, with whom he moved in 2002.  Prior to

2002, Plaintiff lived with his sister, brother-in-law and their two children.[3]  Plaintiff alleges that

he was in so much pain that he mainly lived a sedentary life.  He was dependant upon his sister for

transportation.  Plaintiff's typical day involved watching television, assisting his sister by

watching her children, cooking, doing laundry, and taking out the garbage.  He was able to go

[2] *See* discussion *infra* Part II.B.

[3] The record reflects activities from Plaintiff's daily life during the time that he lived with
his sister's family.  The record does not contain information regarding Plaintiff's daily activities
since he moved in with his children.

shopping with his sister, but could not go alone.  Plaintiff's social and recreational activities

involved watching television and visiting with friends and relatives.  Plaintiff describes the pain as

unbearable and reports that the TENS unit and medication only relieve the pain a little.  He claims

that he can sit between twenty and thirty minutes before having to reposition himself to alleviate

his pain.  Further, he claims that he is unable to stand for more than thirty minutes.


## II. STANDARD OF REVIEW

A reviewing court must uphold the Commissioner's factual decisions if they are supported

by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Williams v. Sullivan*, 970 F.2d 1178,

1182 (3d Cir. 1992), *cert. denied sub nom. Williams v. Shalala*, 507 U.S. 924 (1993).

"Substantial evidence" means more than "a mere scintilla."  *Richardson v. Perales*, 402 U.S. 389,

401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Id.*  The inquiry is not whether the reviewing court would have made the same determination, but

rather whether the Commissioner's conclusion was reasonable.  *Brown v. Bowen*, 845 F.2d 1211,

1213 (3d Cir. 1988).  Some types of evidence will not be "substantial."  For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner]
> ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence
> substantial if it is overwhelmed by other evidence - particularly certain types of evidence
> (e.g. that offered by treating physicians) - or if it really constitutes not evidence but mere
> conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v.*

*Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court, however, does have a duty to review the evidence in its totality.  *See*

*Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'" *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (internal citation omitted).  The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Mathews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258 (4th Cir. 1977).  Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams*, 970 F.2d at 1182 (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### A. The Record Must Provide Objective Medical Evidence

Under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, a claimant is required to provide objective medical evidence in order to prove his disability.  42 U.S.C. § 423(d)(5)(A). ("An individual shall not be considered to be under a disability unless she furnishes such medical and other evidence of the existence thereof as the Secretary may require."); *see also* 42 U.S.C. § 1382c(a)(3)(H)(i).  Accordingly, a plaintiff cannot prove that he is disabled based solely on his

subjective complaints of pain and other symptoms.  He must provide medical findings that show

that he has a medically determinable impairment.  *See* 42 U.S.C. § 423(d)(5)(A); *see also* 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (defining a disabled person as one who is " unable to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . .").

      Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness,

or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless

"medical signs"or laboratory findings show that a medically determinable impairment(s) is

present."  20 C.F.R. § 4040.1529(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999)

(rejecting claimant's argument that the ALJ failed to consider his subjective symptoms where the

ALJ made findings that complaints of pain and symptoms were inconsistent with objective

medical evidence and claimant's hearing testimony); *Williams*, 970 F.2d at 1186 (denying

claimant benefits where claimant failed to proffer medical findings or signs that he was unable to

work); *Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective

complaints of pain, without more, do not in themselves *constitute* disability").  _____

**B. The Five-Step Analysis for Determining Disability**

      Plaintiff's eligibility for DIB and SSI is governed by 42 U.S.C. §§ 423 and 1382.  A

claimant is eligible for DIB and SSI if he meets the disability period requirements of 42 U.S.C. §

416(i), and demonstrates that he is disabled based on an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A person is

disabled for these purposes if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that he has not engaged in "substantial gainful activity" since the onset of his alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  Given that a claimant bears the burden of establishing these first two requirements, the failure to meet this burden automatically results in a denial of benefits.  *See Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies his initial burdens, the third step requires that he provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments").  *See* 20 C.F.R. § 404.1520(d).  Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits.  *Id.*  If he cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits him to resume his previous employment.  *See* 20 C.F.R. § 404.1520(e).  "Residual functional capacity" is defined as "that which an individual is still able to do despite limitations caused by his or her impairments."  20 C.F.R. § 404.1520(e).  If the claimant is found to be capable of returning to his previous line of work, then he is not "disabled" and not entitled to disability benefits.  20 C.F.R. § 404.1520(e).  Should the claimant be unable to return to

14

his previous work, the analysis proceeds to step five.   To determine the physical exertion

requirements of work, jobs are classified as sedentary, light, medium, heavy, and very heavy.

Sedentary, light, and medium work are defined as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a
> time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.
> Although a sedentary job is defined as one which involves sitting, a certain amount of
> walking and standing is often necessary in carrying out job duties. Jobs are sedentary if
> walking and standing are required occasionally and other sedentary criteria are met.
> (b) *Light work*.  Light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight
> lifted may be very little, a job is in this category when it requires a good deal of walking or
> standing, or when it involves sitting most of the time with some pushing and pulling of arm
> or leg controls. To be considered capable of performing a full or wide range of light work,
> you must have the ability to do substantially all of these activities. If someone can do light
> work, we determine that he or she can also do sedentary work, unless there are additional
> limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
> (c) *Medium work*. Medium work involves lifting no more than 50 pounds at a time
> with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do
> medium work, we determine that he or she can also do sedentary and light work.

*See* 20 C.F.R. §§ 404.1567 and 416.967.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can

perform other substantial gainful work.  *See* C.F.R. § 404.1520(f).  If the Commissioner cannot

satisfy this burden, the claimant shall receive social security benefits.  *Yuckert*, 482 U.S. at 146-47

n.5.


**III. THE ALJ'S DECISION DATED SEPTEMBER 26, 2003**

After reviewing the medical evidence of record and considering Plaintiff's testimony, the

ALJ concluded that Plaintiff was not disabled.

The ALJ determined that Plaintiff met step one of the analysis because he had not engaged

in substantial gainful activity since the alleged onset date of disability, April 1, 1999.  The ALJ

determined that Plaintiff met step two of the analysis because his impairments qualified as "severe" under the Social Security regulations.  *See* 20 C.F.R. § 404.1520(b).  However, the ALJ concluded that Plaintiff did not meet the requirements of step three because his alleged impairments did not meet or medically equal any of the impairments in the Listing of Impairments.  Plaintiff does not dispute the ALJ's findings at steps one, two, or three.

The ALJ proceeded to step four of the analysis, which focuses on whether the claimant's residual functional capacity sufficiently permits him to resume his previous employment.  *See* 20 C.F.R. § 404.1520(b).  The ALJ determined that Plaintiff's allegations regarding his limitations were not credible.  In evaluating Plaintiff's subjective complaints of pain, the ALJ noted that he carefully considered such matters as:

> (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g. movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities and work record.

The ALJ determined that the medical evidence, which he had summarized, could not reasonably produce the alleged subjective complaints precluding work-related activities.  The ALJ noted that, while Plaintiff had performed light packing work prior to the accident in which he had sustained the injuries at issue, subsequent to the accident Plaintiff performed very heavy construction work for which he lifted up to 300 pounds as well as medium work performing housing maintenance for which he lifted up to 50 pounds.  The ALJ further noted that there is no medical explanation for Plaintiff's present complaints, which were not present when the Plaintiff was performing heavy and medium work following the 1993 trauma.

After reviewing the objective medical evidence, Plaintiff's complaints of pain, and

16

Plaintiff's testimony, the ALJ concluded at step four that, although Plaintiff suffered from a medically severe impairment, he retained the residual functional capacity to perform the demands of light work. *See* 20 C.F.R. § 404.1567(b). He added that his determination that Plaintiff could perform light work was supported by the state agency medical consultants. However, the ALJ concluded that Plaintiff's past relevant employment as a maintenance man and construction worker required him to perform medium and heavy work respectively. In light of the ALJ's conclusion that Plaintiff could perform light work, the ALJ determined that Plaintiff was not capable of performing his past relevant work consisting of medium to heavy work. Consequently, the ALJ found that Plaintiff met step four of the analysis because his residual functional capacity did not permit him to perform his past relevant work. Plaintiff challenges the ALJ's conclusion that Plaintiff could perform light work.

The ALJ proceeded to step five, where the burden shifts to the Commissioner to demonstrate that there are other jobs that exist in significant numbers that the Plaintiff has the capacity to perform given his age, education, vocational history, and residual functional capacity. *See* C.F.R. § 404.1520(f). He commented that Plaintiff, as a thirty-seven year old man, is defined in the regulations as a "younger individual."[4] 20 C.F.R § 404.1563(c). He further noted that Plaintiff has limited education and no transferable skills. The ALJ indicated that, if the Plaintiff has the exertional residual functional capacity to perform substantially all primary strength demands required by a given level of exertion and there are no nonexertional limitations, then the Medical-Vocational Guidelines may be used to direct an unfavorable decision against the Plaintiff.

---

[4] Social Security Regulations define a younger individual as an individual between eighteen and forty-nine years of age. 20 C.F.R. §§404.1563(c), 416.963(c); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200(h).

Citing 20 C.F.R. § 404.1567, the ALJ explained that, to determine the physical exertion requirements of work in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  When all of the criteria of a Medical-Vocational Rule are met, the existence of jobs in the national economy is met by administrative notice.  The ALJ classified the Plaintiff as being able to perform the demands of the full range of light work.  Since the ALJ determined that Plaintiff can perform light, and therefore sedentary, work, he determined that Plaintiff was "not disabled" as directed by Medical-Vocational Rule 202.18.  The ALJ concluded that Plaintiff was not disabled at any time through the date of his decision.  *See* 20 C.F.R. § 404.1520(e).

Plaintiff now raises four arguments challenging the ALJ's decision:

1. The Commissioner improperly relied upon the testimony of a medical expert whose testimony was at variance with the objective medical evidence.
2. The Commissioner improperly rejected the Plaintiff's complaints of pain and did not follow the Commissioner's own regulations concerning the proper evaluation of pain.
3. The Commissioner's conclusion that Plaintiff could perform a full range of light work was not supported by the evidence.
4. The ALJ was biased toward the plaintiff warranting a remand to a new ALJ.

The Commissioner contends that the ALJ's decision is supported by substantial evidence and therefore should be affirmed.

## IV. DISCUSSION

### A. The Reliance on the Testifying Medical Expert's Testimony Was Not Improper

Plaintiff argues that the ALJ erred by relying on the testimony of the medical expert at the hearing, Dr. Chirls.  However, the ALJ's reliance on Dr. Chirls was reasonable.

Plaintiff argues that the ALJ's reliance on Dr. Chirls's testimony "that there was no

evidence of a disability" warrants reversal because Dr. Chirls's testimony was "completely at variance with the objective medical evidence."  Specifically, Plaintiff argues that there was ample, "essentially uncontroverted", medical evidence that Plaintiff suffers from a severe low back condition that caused him pain, and that his treating physician had opined that he could not even perform sedentary work.  Plaintiff cites consultative examiner findings including that Plaintiff "cannot get involved in repetitive bending or lifting", had clinical evidence of a right sciatic syndrome, could only walk a few steps without an assistive device, and should engage in a pain management program.

First, Plaintiff's characterization of Dr. Chirls's testimony as being "completely at variance with the objective medical evidence" is not supported by the record.[5]  While the various physicians' opinions as to Plaintiff's residual functional capacity may differ, Dr. Chirls's conclusions are consistent with the objective medical findings of such physicians.  The medical expert, Dr. Chirls, testified that Plaintiff's EMG results were essentially negative, and that positive MRI findings had not been correlated with physical findings in the record as would be required to substantiate the results.  Dr. Chirls noted that, although Plaintiff's MRI showed herniated discs at L5/S1, there was no clinical correlation of objective findings, there was no evidence for dermatone deficiency in the neurological examination, and that Plaintiff did not have the appropriate distribution sensory loss, and that more than thirty percent of patients who had an MRI showing herniated discs are asymptomatic.  He further stated that the treating physician's opinions, indicating that Plaintiff was severely limited, were not consistent with the objective findings in the

_____

[5] Thus, Plaintiff's reliance on *Dorf v. Bowen*, 794 F.2d 896 (3d Cir. 1986) ("We have consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with the testimony of the claimant's treating physician.") is inapt.

record.  Ultimately Dr. Chirls opined that Plaintiff could do medium work.

As summarized above, Dr. Vassallo's March 21, 2001 examination of Plaintiff indicated that Plaintiff's deep tendon reflexes were equal and sensation was intact.  He observed that Plaintiff's muscle strength was four out of five in the arms and legs.  Forward flexion of the lumbar spine was in a normal range at seventy-five degrees out of ninety.  Plaintiff's shoulders, hips, ankles, and knees had normal range of motion.  Further, Dr. Vassallo noted that Plaintiff did not require a cane to walk.  The only limitation on Plaintiff's movement was that he not perform repetitive lifting or bending.

Almost one year later, on March 15, 2002, Dr. Bid examined Plaintiff.  Dr. Bid indicated that Plaintiff was able to squat; his deep tendon reflexes were two plus and muscle strength was four plus in all four extremities.  Further, Plaintiff's cervical ranges of motion were normal; lumbar flexion was mildly limited at eighty out of ninety degrees.  While Dr. Bid observed that Plaintiff walked with a cane, he noted that Plaintiff used the cane incorrectly.  He gave Plaintiff a fair prognosis and noted that Plaintiff's treatment by his physician for back pain was sufficient, suggesting only that pain management and work conditioning programs be added.

Further, Dr. Udomsaph opined that Plaintiff could do light work with occasional postural limitations.  Similarly, Dr. From's review of the record in April 2002 resulted in a finding that Plaintiff could perform light work.  Additionally, he found that there were minimal positive findings in the record, and commented that the MRI was only mildly positive.

Dr. Darbouze's treatment notes indicate that, while Plaintiff was positive for lumbar tenderness, Dr. Darbouze only prescribed medication and recommended physical therapy. Moreover, while an MRI showed degenerative changes and a broad based herniation at L5-S1, the

20

remainder of the lumbar discs did not show any significant findings and Dr. Hanna's, to whom Dr. Darbouze referred Plaintiff, EMG results that were essentially negative.  Only in a residual functional capacity assessment form did Dr. Darbouze opine, in contrast to the other physicians, that Plaintiff experienced a disability that would prevent him from doing *any* type of work.

Thus, while the various doctors had differing opinions about Plaintiff's residual functional capacity, Dr. Chirls's testimony regarding the medical evidence is consistent with the weight of the objective medical evidence.

Second, there is no indication that the ALJ failed to consider the medical findings of any treating physician.  Instead, the ALJ's opinion reflects that the ALJ considered the evidence of record, including the findings of the treating physician, the opinion of the treating physician that Plaintiff was unable to perform a full range of sedentary work, the opinions of the state agency physicians, and the testimony of the claimant.  Notably, the ALJ did not simply adopt either Dr. Chirls's or Dr. Darbouze's opinions as to the Plaintiff's residual functional capacity, but rather implicitly rejected both in reaching his own conclusion after evaluating the evidence of record. Indeed, because residual functional capacity is an administrative finding dispositive of a case, it is the ALJ's responsibility to evaluate and determine residual functional capacity.  *See* 20 C.F.R. §§ 404.1527(e) and 416.927(e); *see also* SSR 96-5p.[6]

Accordingly, the Court concludes that the ALJ's reliance on the medical expert's testimony was reasonable.

### B.  Plaintiff's Complaints of Pain Were Properly Considered

Plaintiff argues that the ALJ failed to properly consider Plaintiff's subjective complaints of

---

[6] Available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-05-di-01.html.

pain, and that, had such complaints been properly considered, Plaintiff's functional capacity would be less than light or sedentary.  However, in conducting the residual functional capacity analysis, the ALJ properly considered Plaintiff's subjective complaints of pain.

The ALJ noted that Plaintiff has a history of low back and neck pain since 1993 and that Plaintiff testified that he could no longer work because of strong pain in his back and right knee, that his pain was becoming worse and worse, and that he could not sit or stand for extended periods.  The ALJ concluded that Plaintiff's "complaints of disabling pain and other symptoms and limitations precluding all significant work activity, especially regarding his assertions about limitations on sitting, standing, walking, lifting, and carrying, are not credible or consistent with Social Security Ruling 96-7p, 20 CFR 404.1529, and 20 CFR 416.969."  Further, the ALJ indicated that he carefully considered a series of factors, set forth above, in reaching his conclusion that Plaintiff's subjective complaints could not reasonably be accepted.  The ALJ stated that the medical evidence "reveals objective findings that, in [his] opinion, could not reasonably produce the alleged subjective complaints precluding work-related activities", and engaged in a thorough comparison of the objective medical evidence and Plaintiff's subjective complaints.  The ALJ noted that, for example, Plaintiff's work history revealed that following his accident, Plaintiff performed both heavy construction work and medium housing maintenance work; Plaintiff had not had any recent physical therapy; that analgesics relieved his symptoms; there was no medical support for Plaintiff's knee complaints; there was no indication of any need for surgical intervention; there was no indication of emergency room treatment due to exacerbation of symptoms; and the treating physicians had felt that conservative treatment was adequate to address his symptoms.  Based on the foregoing, the ALJ concluded that while Plaintiff "may experience

22

some pain and discomfort from his condition, the record is devoid of any clinical evidence to

substantiate his complaints" and that "the severity of his symptoms were not of a level to preclude

at least light work."

Consequently, the ALJ's evaluation of Plaintiff's subjective complaints of pain was proper.

*See* 20 C.F.R. 404.1529(c) and 416.929(c).

### C.  The ALJ's Conclusion that Plaintiff Could Perform a Full Range of Light Work Is Supported by Substantial Evidence

Plaintiff argues that the ALJ's conclusion that Plaintiff could perform a full range of light

work is not supported by the evidence.  However, the ALJ's determination that Plaintiff could

perform a full range of light work is supported by substantial evidence.

After thoroughly analyzing the medical evidence and Plaintiff's subjective complaints of

pain, the ALJ concluded:

> Although the claimant has suffered from a medically 'severe' impairment, the evidence establishes that the claimant has the capacity to function adequately to perform many basic activities associated with work.  However, it is evident that the claimant suffers some pain and limitations due to his impairments, and as a result, his capacity to perform work has been significantly affected.  Therefore, I find that the claimant retains the residual functional capacity to perform the exertional demands of light work.  My conclusion is supported by the highly qualified state Agency medical consultants who also opined that the claimant could perform light work.

Plaintiff argues that the findings of Dr. Darbouze, Dr. Vassallo, Dr. Bid, and Dr. From are

inconsistent with the ALJ's conclusion that Plaintiff could perform light work.

As set forth above, "light work" is defined as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light

work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

*See* 20 C.F.R. §§ 404.1567 and 416.967.  The Social Security Administration has provided

guidance further explaining that "the full range of light work requires standing or walking, off and

on, for a total of approximately 6 hours of an 8-hour workaday[; s]itting may occur intermittently

during the remaining time."  SSR 83-10 (available at http://www.ssa.gov).  In addition, "[t]he

lifting requirement for the majority of light jobs can be accomplished with occasional, rather than

frequent, stooping."  *Id.*

Contrary to Plaintiff's argument, the findings of Doctors Vassallo, Bid, and From are not

inconsistent with the ALJ's conclusion.  First, Dr. Vassallo determined that Plaintiff cannot get

involved in repetitive bending or lifting, but did not need any hand-held assistive devices for

walking and could use both hands for fine and gross manipulation.  The limitation against

*repetitive* bending and lifting is not inconsistent with the occasional stooping required for light

work.  Second, while Dr. Bid observed that Plaintiff used a cane in his right hand for ambulation,

and indicated that the cane was needed all the time and that he could walk only a few steps without

the cane, Dr. Bid also noted that Plaintiff used the cane improperly.  Dr. Bid did not expressly

advise any postural limitations.  Third, Dr. From opined that Plaintiff could occasionally lift twenty

pounds, frequently lift ten pounds, stand or walk for at least two hours in an eight hour workday, sit

about six hours in an eight hour workday, and had no limitations on pushing or pulling.  He

concluded that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and

crawl, but could never use ladders, ropes, or scaffolds.  Further, he concluded that Plaintiff had no

manipulative, visual, or communicative limitations, and that his only environmental limitation was

to avoid concentrated exposure to hazards.  Dr. From commented that the Plaintiff improperly used

a cane in the wrong hand and believed that the medical evidence did not justify Plaintiff's use of the cane.  Dr. From concluded that there was no contraindication to the performance of light duty with limited standing and walking.  Thus, Dr. From's ultimate conclusion was that Plaintiff could perform light work.  Although he did find moderate limitations, including a limitation on Plaintiff's ability to stand and walk for two hours in an eight hour day, his ultimate opinion was that Plaintiff could perform substantially all of the activities associated with light work.  That does not conflict with the findings of the ALJ.  *Cf. Landeta v. Comm'r of Social Security*, No. 05-3506, 2006 WL 2337664, at *4-5 (3d Cir. Aug. 14, 2006).  Thus, the conclusions of Doctors Vassallo, Bid, and From are not inconsistent with the ALJ's finding that Plaintiff retained the residual functional capacity to perform light work.

Conversely, the conclusions of Dr. Darbouze do conflict with the ALJ's determination. Specifically, Dr. Darbouze indicated that Plaintiff's pain and other symptoms were severe enough to constantly interfere with attention and concentration needed to perform even simple work tasks; that he could walk only one block without rest or severe pain, sit for fifteen minutes at a time, and stand twenty minutes at a time; that Plaintiff could sit, stand, or walk for less than two hours in an eight-hour work day; that he could only occasionally lift weights weighing less than ten pounds; that he could only rarely stoop, crouch, or climb stairs; that he could not twist or climb ladders; and that he had significant limitations on reaching, handling, and fingering.  In contrast to the decision of the ALJ as well as all of the other physicians, Dr. Darbouze concluded that Plaintiff could not perform the demands of sedentary work.

While Dr. Darbouze's conclusions conflict with the ALJ's determination, the ALJ adequately explained the basis for his determination, allowing for a meaningful review.  The ALJ

considered that Dr. Darbouze opined that Plaintiff was unable to perform a full range of sedentary work.  However, the ALJ also recognized that Dr. Darbouze had stated that Plaintiff's symptoms were relieved by analgesics and that Dr. Darbouze had not recommended surgical intervention or inpatient hospitalization, but rather only physical therapy, which Plaintiff had not even pursued. Further, conservative treatment had been considered adequate to treat Plaintiff's symptoms. Moreover, as described above, the ALJ thoroughly explained his evaluation of the remaining record evidence, including the objective medical evidence, the conclusions of the other doctors, and Plaintiff's own statements, in reaching his conclusion implicitly rejecting certain of Dr. Darbouze's assessments.  Thus, the ALJ's explanation is adequate.

Further, the ALJ's determination is supported by substantial evidence.  In addition to the conclusions of Doctors Vassallo, Bid, and From as described above, the ALJ's decision is supported by the conclusions of Dr. Udomsaph.  Consistent with the definition of light work, Dr. Udomsaph concluded that the Plaintiff could occasionally lift up to 20 pounds; frequently lift up to 10 pounds; stand or walk about six hours in an eight-hour work day; sit about six hours in an eight-hour work day; push or pull without limitation; occasionally climb, stoop, kneel, crouch, and crawl; and frequently balance.  Dr. Udomsaph advised no manipulative, visual, communicative, or environmental limitations.  Moreover, the ALJ's conclusion was actually more restrictive than that of Dr. Chirls, who had opined that Plaintiff could perform medium work.  Based on these assessments of the Plaintiff's residual function capacity, the ALJ's finding that the Plaintiff could perform a full range of light work is supported by substantial evidence.

Moreover, questionnaires completed by Plaintiff reveal that he helped his sister cook, wash dishes, do the laundry, babysit his sister's children, and take out the garbage, and also visited with

26

family and friends.  Plaintiff's daily activities do not suggest that Plaintiff was limited to the extent alleged and bolster the ALJ's determination.

Consequently, the Court concludes that the ALJ's determination that Plaintiff could perform light work is supported by substantial evidence.

### D.  The ALJ's Step Five Analysis

The ALJ properly concluded at step five that Plaintiff could do other work in the national economy.  Based on the ALJ's determination that Plaintiff could perform a full range of light work, the ALJ relied on Rule 202.18 of the Medical-Vocational Guideline to determine that Plaintiff could do other work in the national economy.  The Commissioner may rely on these rules as long as the claimant's age, education, work experience, and residual functional capacity coincide with the criteria of a rule contained in the Guidelines.  20 C.F.R. §§ 404.1569 and 416.969; *Heckler v. Campbell*, 461 U.S. 458, 467-468 (1983).

Rule 202.18 requires a finding of not disabled if a claimant is a younger individual, with limited education, no transferable skills, and an ability to do light work.  20 C.F.R. Pt. 404 Subpt. P, App. 2, Table No. 2, Rule 202.18.  Since he was thirty-seven years old as of the date of the ALJ's decision,  Plaintiff was classified as a younger individual.  Further, Plaintiff alleged that he could not communicate effectively in English, did not complete high school, and had no transferable skills.  In light of these factors, Medical-Vocational Guidelines Rule 202.18 dictated a finding of not disabled.

### E. The Record Does Not Support a Finding of Bias

Plaintiff argues that the ALJ was biased against Plaintiff.  Specifically, Plaintiff points to the ALJ's questioning of Plaintiff's ability to speak English, any criminal history, and whether he

had filed a prior claim for benefits.  Principles of due process require that administrative hearings be full and fair, and judicial interpretation of administrative regulations provide for judicial review of a claim of bias in an administrative proceeding.  *See Hummel v. Heckler*, 736 F.2d 91, 94 (3d Cir. 1984) (finding that 20 C.F.R. §§ 404.940, 416.1440 permit judicial review of bias claims in a proceedings under § 405(g)); *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401-402 (1971) (stating that while a social security "hearing is informal in nature, due process requires that any hearing afforded claimant be full and fair").  However, the Court concludes that the ALJ's questioning was proper and does not evidence bias.

An ALJ has a duty to fully develop the record, which encompasses the responsibility to elicit testimony at an administrative hearing.  20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3), 404.1529(a), 416.929(a).  Moreover, an ALJ must gather evidence sufficient to allow him or her to evaluate the credibility of Plaintiff's subjective complaints.  *See* 20 C.F.R. §§ 404.1529 and 416.929.

As indicated, Plaintiff challenges three lines of questioning by the ALJ:  (1) Plaintiff's ability to speak English; (2) whether he had been arrested; and (3) whether he had filed a prior claim for benefits.  Each line of questioning reflects a proper discharge of the ALJ's duties.  First, because language proficiency may be determinative of a disability finding at step five of the sequential evaluation, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.17, the ALJ was reasonable in developing the record as to Plaintiff's ability to speak English.  Second, because a claimant adjudged disabled is ineligible to collect benefits for any period of time spent in a correctional facility for a conviction of felony, *see* 20 C.F.R. §§ 404.468(a), 416.212, the ALJ was reasonable in developing the record as to whether Plaintiff had ever been arrested.  Third, because

28

an eligible claimant's monthly disability benefits could be offset against a Worker's Compensation benefit, 20 C.F.R. § 404.407, and because the receipt of Worker's Compensation benefits would suggest the potential existence of additional medical records which the ALJ would be responsible for obtaining, see 20 C.F.R. 404.1512, 404.1513, 416.912, 416.913, the ALJ was reasonable in developing the record as to whether Plaintiff had previously filed a claim for benefits.

Plaintiff relies heavily on *Rosa v. Bowen*, 677 F. Supp. 782, 783 (D.N.J. 1988), in which the Court found that a "hearing was shameful in its atmosphere of alternating indifference, personal musings, impatience and condescension." *Id*. at 783.  Specifically, the ALJ under review in *Rosa* had evinced bias through an expressed desire to finish the hearing quickly, had failed to credit the claimant's attorney's procedural requests, and had ordered the claimant's attorney to accelerate his presentation of the case.  Contrary to the situation at issue in *Rosa*, the record in the instant matter fails to evidence an atmosphere of indifference, personal musing, impatience, or condescension.  Each of the lines of questioning challenged by Plaintiff represent a proper effectuation of the ALJ's duties.  Moreover, nothing about the manner in which such questions were asked is suggestive of bias.  In support of Plaintiff's allegation of bias, Plaintiff points to comments by the ALJ such as "These things run together after awhile."  However, the record reflects that the ALJ merely made such comments after correcting his recollection and does not suggest bias against Plaintiff.  Further, while Plaintiff argues that the ALJ's questioning was "persistent", that allegation is contradicted by the transcript of the testimony.

Consequently, the Court finds that the record does not demonstrate bias on the part of the ALJ or that Plaintiff otherwise was deprived of the fundamental fairness required by due process.

**IV. CONCLUSION**

For the foregoing reasons, the Court concludes that the ALJ's factual findings are supported by substantial evidence, and thus affirms the Commissioner's final decision denying benefits for Plaintiff.  An appropriate order accompanies this opinion.

DATED:  August 29, 2006

s/ Joel A. Pisano
JOEL A. PISANO
UNITED STATES DISTRICT JUDGE

30